UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CIARA O'SULLIVAN, *et al.*,** | |
| Plaintiffs | |
| v. | Case No. 22-cv-1189 (CRC) |
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,** | |
| Defendants. | |

## MEMORANDUM OPINION

Dr. Ciara O'Sullivan is an Irish physician currently serving as a consultant and professor at the Mayo Clinic. She arrived at the Clinic in 2016, following four years of post-graduate medical training in the United States on a "J-1" nonimmigrant visa. Absent a waiver from the U.S. Citizenship and Immigration Services, Dr. O'Sullivan's J-1 visa requires her to return to Ireland for a period of two years before she can seek U.S. permanent resident status. Touting her many accolades and significant contributions to the Mayo Clinic, in 2017, the Clinic applied to the Department of Health and Human Services ("HHS") for a recommendation that the return requirement of her visa be waived. But following a negative assessment by an agency review panel, HHS denied the Mayo Clinic's request in 2019 as well as a subsequent request for reconsideration involving a different set of reviewers in 2021. Dr. O'Sullivan and the Clinic then brought suit, challenging HHS's 2021 denial as arbitrary and capricious under the Administrative Procedure Act ("APA"). The complaint seeks a declaratory judgment that the denial was unlawful, vacatur of the agency's decision, and a writ of mandamus compelling the agency to give Dr. O'Sullivan a favorable recommendation or else adjudicate the application consistent with the applicable law.

1

HHS first moved to dismiss the complaint on jurisdictional grounds. The agency contended that the decision to deny the waiver recommendation was committed to agency discretion by law and that the Immigration and Nationality Act ("INA") otherwise barred judicial review. The Court denied HHS's motion to dismiss as to Plaintiffs' APA claim, finding that the agency's regulations provided sufficient standards for judicial review, and that the INA posed no further bar. It correspondingly dismissed Plaintiffs' mandamus claim, finding that its APA jurisdiction precluded jurisdiction under the Mandamus Act by providing a possible alternative remedy.

Both parties have since moved for summary judgment on the administrative record. But while this litigation was underway, the Mayo Clinic resubmitted another application on behalf of Dr. O'Sullivan to HHS, providing additional evidence and seeking still further reconsideration of the agency's denial of a waiver recommendation. This most recent request is fatal to the Court's merits review of the agency's 2021 denial, as it renders that decision nonfinal. Without final agency action, the APA does not provide Plaintiffs with a cause of action. The Court will therefore deny Plaintiffs' motion for summary judgment, grant HHS's cross motion for summary judgment, and dismiss the case without prejudice to refiling after any unfavorable decision on the most recent application.

## I.     Background

The J-1 Exchange Visitor Program is a visa program designed to facilitate international cultural exchange. See 22 U.S.C. § 2451. Foreign-national physicians, like Dr. O'Sullivan, often use the J-1 visa program to complete graduate medical education in the United States. See 8 U.S.C. § 1101(a)(15)(J); 22 C.F.R. § 62.27(a). As part of the program, J-1 physicians generally must return to their home country (or country of last residence) for a period of at least

two years before they can pursue U.S. permanent resident status or certain other employment visas. See 8 U.S.C. § 1182(e). However, the Director of the U.S. Citizenship and Immigration Services ("USCIS") may waive this requirement upon recommendation of an "interested United States Government agency," or "IGA." See id.

An IGA may request a waiver of the return requirement for a J-1 visitor who "is actively and substantially involved in a program or activity . . . of interest to such agency." 22 C.F.R. § 41.63(c)(1). Upon favorable recommendation from the IGA, waiver requests are considered by the Department of State's Waiver Review Division, which ultimately forwards its recommendation to the U.S. Department of Homeland Security for USCIS's final adjudication. See 22 C.F.R. §§ 41.63(a)(2), (c); 8 C.F.R. § 212.7(c)(9). HHS is among the government agencies that may make an IGA waiver recommendation, in its case "for the delivery of health care service to carry out the Department's mission to increase access to care for the nation's most medically underserved individuals." 45 C.F.R. § 50.3(a). As alleged in the complaint, "a favorable recommendation from an IGA nearly always results in [an] ultimate positive recommendation from the Department of State and then approval of the waiver request by USCIS." Compl. ¶ 9.

Breast cancer researcher and Irish citizen Dr. Ciara O'Sullivan entered the United States on a J-1 nonimmigrant visa to complete her post-graduate medical training between July 2012 and June 2016. Id. ¶¶ 42–44. After finishing her studies, Dr. O'Sullivan went on to serve as an Assistant Professor of Medicine in the Mayo Clinic College of Medicine and as a consultant within the Clinic's Division of Medical Oncology. Id. ¶ 42. She is currently living and working in the United States in valid "O-1" nonimmigrant status, which is "reserved for those with '[extraordinary] ability in the sciences, arts, education, business or athletics which has been

3

demonstrated by sustained national or international acclaim.'" Id. ¶ 45 (quoting 8 U.S.C. § 1101(a)(15)(O)). However, because of Dr. O'Sullivan's time in J-1 status, absent a waiver she will need to spend at least two years in Ireland before pursuing various other U.S. immigration options, including permanent residence. See 22 C.F.R. § 41.63(a)(1)(iii). Without permanent resident status, Dr. O'Sullivan is unable to apply for certain research grants. Id. ¶ 46.

In September 2017, the Mayo Clinic applied to HHS for an IGA waiver recommendation for Dr. O'Sullivan. See Certified Administrative Record ("CAR"), at 1–5. Its application packet included detailed descriptions of Dr. O'Sullivan's accomplishments and current research and sought to address each of HHS's criteria for waiver recommendations. See, e.g., CAR at 12–49 (Letter in Support of J-1 Waiver Application). As set forth in its regulations, HHS assigned three reviewers to evaluate the application and provide a recommendation on whether to grant it. See 8 C.F.R. § 50.2. All three declined to recommend waiver of the return requirement due to various perceived deficiencies in the application, leading the agency to deny the Clinic's request in May 2019. CAR at 52–56, 64–66. In September 2019, the Mayo Clinic requested that HHS reconsider its initial denial, and submitted additional information addressing the reviewers' concerns. See CAR at 127–30. After considerable back and forth between the Clinic and the agency, including another submission of supporting documentation, id. at 70–75, and two new technical reviews declining to recommend Dr. O'Sullivan, id. at 57–60, HHS issued a "final determination" denying the Clinic's waiver recommendation request in January 2021. Id. at 69.

Plaintiffs, Dr. O'Sullivan and the Mayo Clinic, filed this suit in April 2022, challenging HHS's decision under the APA and INA and seeking relief pursuant to the Mandamus Act and

4

Declaratory Judgment Act.[1]  Compl. ¶¶ 98–116.  The Court denied HHS's motion to dismiss the complaint as to the APA claim in March 2023, Mem. Op. & Order, ECF No. 13, and the parties subsequently filed and briefed cross motions for summary judgment on the merits of Plaintiffs' APA claim.  Plaintiffs contend that the agency's explanation for the denial was insufficient and that the underlying reviews supporting the decision contradict or ignore the evidence in the record while HHS responds that its decision-making process and explanation more than met the APA's minimal requirements.  Pls.' Mot. Summ. J. at 1–4; Def.'s Opp'n and Cross Mot. for Summ. J. ("Opp'n"), at 2–3.

In February 2023, while the current lawsuit was pending, the Mayo Clinic submitted a letter, with enclosures, titled "Application for Waiver of the J-1 Two-Year Foreign Residence Requirement of the Exchange Visitor Program" listing Dr. O'Sullivan as the beneficiary.  See Opp'n Ex. 1 ("Pls.' Resubmission").  It was styled as a "resubmission . . . designed to address some of the Department of Health and Human Services' concerns expressed with Mayo Clinic's initial waiver request filing for Dr. Ciara O'Sullivan" and acknowledged that "[t]he denial of that initial filing is subject to an ongoing federal court challenge[.]"  Id. at 2.

II.    **Legal Standards**

Ordinarily, a court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  But "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal" and "the entire case on review is a question of

---

[1] As the Court has noted previously, the complaint's stand-alone claim for deprivation and violation of rights under the INA does not explain what provision of the INA provides a cause of action and the Court will interpret these allegations as a restatement of Plaintiffs' APA claim.  See Mem. Op. & Order at 4 n.2.

law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (collecting cases) (internal citations and quotation marks omitted).  In such a case, "[s]ummary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Franciscan St. Margaret Health v. Azar, 407 F. Supp. 3d 28, 33 (D.D.C. 2019) (quoting Citizens for Responsibility & Ethics in Wash. v. SEC, 916 F. Supp. 2d 141, 145 (D.D.C. 2013)).  "[A] court need not and ought not engage in fact finding" given that "determining the facts is generally the agency's responsibility" and review is "typically limited to the administrative record." Kondapally v. U.S. Citizenship & Immigr. Servs., 557 F. Supp. 3d 10, 20 (D.D.C. 2021) (quoting Lacson v. U.S. Dep't of Homeland Sec., 726 F.3d 170, 171 (D.C. Cir. 2013)).

### III.    Analysis

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  "While the requirement of finality is not jurisdictional, without final agency action, 'there is no doubt that [plaintiffs] would lack a cause of action under the APA.'"  Soundboard Ass'n v. Fed. Trade Comm'n, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n, 324 F.3d 726, 731 (D.C. Cir. 2003)).  "To constitute final agency action, two conditions must be met: (1) 'the action must mark the consummation of the agency's decisionmaking process' and (2) it 'must be one by which rights or obligations have been determined, or from which legal consequences will flow.'"  United States v. Regenerative Scis., LLC, 878 F. Supp. 2d 248, 261 (D.D.C. 2012), aff'd, 741 F.3d 1314 (D.C. Cir. 2014) (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)).  In its cross motion for summary judgment, HHS contends that Plaintiffs' 2023

request for reconsideration of the agency's 2021 waiver recommendation denial rendered that decision nonfinal and therefore unreviewable or else unripe.  Opp'n at 29–31.  The Court agrees.

The law is "well-established that a party may not simultaneously seek both agency reconsideration and judicial review of an agency's order."  Tenn. Gas Pipeline Co. v. FERC, 9 F.3d 980, 980 (D.C. Cir. 1993) (per curiam) (citing Wade v. FCC, 986 F.2d 1433, 1433 (D.C. Cir. 1993) (per curiam)).  If a party asks an agency to reconsider its decision, the request "renders an agency's otherwise final action non-final with respect to the requesting party."  Clifton Power Corp. v. FERC, 294 F.3d 108, 110 (D.C. Cir. 2002).  When a petitioner who has sought agency reconsideration also seeks judicial review of the same underlying order, the petition for judicial review is "not only premature but incurably so" in challenging nonfinal agency action.  Id.  This bar to APA review applies "regardless of the order of filing" because "[t]he danger of wasted judicial effort that attends the simultaneous exercise of judicial and agency jurisdiction[] arises whether a party seeks agency reconsideration before, simultaneous with, or after filing an appeal or petition for judicial review."  Wade, 986 F.2d at 1434 (internal citation omitted).  And although finality is not jurisdictional in this case, a court "cannot proceed without final agency action" and must "dismiss [such a] case for failure to state a cause of action under the APA."  Soundboard, 888 F.3d at 1263.

Here, Plaintiffs' claim is incurably premature because HHS is currently evaluating the Mayo Clinic's reconsideration request, submitted to HHS while the present litigation was still pending.  Opp'n at 29–30; see also Pls.' Resubmission.  Dr. O'Sullivan and the Clinic pose five objections to this conclusion, but each is unavailing.

First, Plaintiffs contend that the reconsideration request should be excluded under Federal Rule of Evidence 408 as the request was discussed by the parties during failed settlement talks.

See Pls.' Reply at 18 ("[The] February 2023 . . . additional submission was arranged with the government in the hopes that the parties could amicably resolve this Matter without further court involvement."). Rule 408 prohibits the use of "a statement made during compromise negotiations" "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," but provides that "[t]he court may admit this evidence for another purpose[.]" Fed. R. Evid. 408. Not only is Plaintiffs' resubmission devoid of references to settlement, but even assuming the rule would otherwise apply, HHS has offered the resubmission solely to assert that the present litigation is not ripe for judicial intervention. Opp'n at 29–31. As is clear from the rule itself, "[t]he privilege for settlement discussions applies[] only when the discussions are proffered to prove liability." Eugene Burger Mgmt. Corp. v. U.S. Dep't of Hous. & Urb. Dev., 192 F.R.D. 1, 10 (D.D.C. 1999) (citing Fed. R. Evid. 408). Accordingly, Rule 408 does not bar the Court's consideration of the Mayo Clinic's resubmission for the purpose of assessing finality of agency action.

Second, Plaintiffs contend that the reconsideration request should be excluded because it is not part of the existing administrative record. Pls.' Reply at 17–18. Plaintiffs are correct that "[w]hen reviewing *the merits* of a challenge to agency action, a federal court is limited to the materials contained in the administrative record." Mass. Coal. for Immigr. Reform v. U.S. Dep't of Homeland Sec., 20-cv-03438 (TNM), 2023 WL 6388815, at *7 (D.D.C. Sept. 30, 2023) (citing Hill Dermaceuticals, Inc. v. FDA, 709 F.3d 44, 47 (D.C. Cir. 2013)) (emphasis in original). But the agency did not raise the resubmission to substantively resolve the dispute and indeed the Court cannot resolve it on the merits if Plaintiffs lack a cause of action.

Third, Plaintiffs contend that even if the Court considers their resubmission, the 2021 denial is still final because HHS cannot reopen its prior decisions. With no formal appeal

process for waiver recommendation denials, Plaintiffs press, "this Court [has] no basis to assume that [HHS] ha[s] reopened the prior denial or indeed *could* reopen that denial if they wanted to do so." Pls.' Reply at 19–20. But the record clearly demonstrates that HHS not only *can* reopen its prior decisions but has in the past in exactly these circumstances. When the Mayo Clinic tried to "appeal" the agency's waiver determination in 2019, see CAR at 127 ("Appeal of J-1 Waiver Denial"), the agency reopened its prior decision, considered the Clinic's additional evidence, conducted further reviews, and issued a new determination. See id. at 57–60 (2019 and 2020 Technical Reviews), 67–68 (2020 HHS Request for Clarification), 69 (2021 Denial). Despite the lack of an appeal process, reconsideration is evidently not "impossible," as Plaintiffs contend. Pls.' Reply at 20. And with HHS's new round of reconsideration, Plaintiffs "may indeed still obtain relief, which would render [this] claim unnecessary." Perry v. U.S. Dep't of Educ., No. 20-cv-2003 (JEB), 2021 WL 289358, at *2 (D.D.C. Jan. 28, 2021). "In the interim, however, there exists no final agency action that would permit suit under the APA." Id.

  Fourth, Plaintiffs claim that what they submitted was not a request for reconsideration but a new application altogether. Pls.' Reply at 20. They contend that "all indicia" cut against viewing their 2023 resubmission as reopening HHS's prior decision, as "Plaintiffs submitted the new request through different counsel, using new application materials, and including newly available evidence." Id. But accepting that contention would elevate semantics over substance. The resubmission is clearly directed at the same question as not only this litigation, but the Clinic's prior request for reconsideration: whether the agency should recommend Dr. O'Sullivan for a J-1 visa waiver. And regardless of how the resubmission is characterized, the Clinic is "in fact seeking reconsideration and modification of the [agency's prior decision], which renders that decision non-final." King v. Leavitt, 475 F. Supp. 2d 67, 72 (D.D.C. 2007) (finding that a

motion for "stay" was a motion for reconsideration because it "challenges the [agency action] on its merits, submits evidence in an attempt to refute [the agency's] findings[], and essentially seeks the same relief as the initial petition").  Given that the agency has been presented with new evidence that may alter the outcome of its waiver decision, the 2021 denial does not "mark the consummation of the agency's decisionmaking process" and the APA does not provide a vehicle for its review.  Bennett, 520 U.S. at 178 (internal citation and quotation marks omitted).

Finally, Plaintiffs protest that dismissal of their claim would cause them serious hardship.  Pls.' Reply at 20–21.  Though "hardship to the parties of withholding court consideration" is an element of ripeness, see Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003), statutory prerequisites are not prudential doctrines and thus cannot yield to equitable considerations.  See Soundboard, 888 F.3d at 1274 n.6 (noting the "subtle but important distinction between prudential doctrines such as ripeness," where hardship to the parties may favor judicial review, "and the APA's statutory prerequisite of final agency action, without which no cause of action or claim exists").  While the Court appreciates the challenges Dr. O'Sullivan faces in navigating multiple visa programs and remaining unable to apply for permanent residency, "[s]o long as a request for agency reconsideration remains pending, [a plaintiff's] attempt to seek judicial review must be dismissed as 'incurably premature.'" Wade, 986 F.2d at 1434 (quoting TeleSTAR, Inc. v. FCC, 888 F.2d 132, 134 (D.C. Cir. 1989) (per curiam)).

## IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Summary Judgment, grant Defendants' Cross Motion for Summary Judgment, and dismiss the complaint, and the case, without prejudice to refiling should HHS issue a final decision unfavorable to Plaintiffs. A separate Order will follow.

Date:  March 12, 2024

CHRISTOPHER R. COOPER
United States District Judge